IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Chay Thao, <br><br> Petitioner, <br><br> vs. <br><br> Kristi Noem, Secretary, Department of Homeland Security et al., <br><br> Respondents. | Case No. 0:26-cv-01402-DMT-SGE |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

[¶ 1]   THIS MATTER comes before the Court on a Petition for Writ of Habeas Corpus filed on February 12, 2026. Doc. No. 1. The Respondents filed a Response on February 20, 2026. Doc. No. 8. Petitioner filed a Reply on February 23, 2026. Doc. No. 9.

[¶ 2]   Petitioner is a 56-year-old citizen of Laos and member of the Hmong ethnic minority. Doc. No. 1, ¶ 23. He entered the United States in 1979. He was a lawful permanent resident until 2012 when removal proceedings began against him. See Doc. No. 8-1, ¶¶ 8-11. He was arrested by ICE agents on September 13, 2012, and ultimately an immigration judge ordered him removed after his felony conviction for Unlawful Sexual Intercourse with a Minor, victim under 16-years-old and defendant over 21-years-old. Doc. Nos. 1, ¶¶ 24, 25; 8-1; 8-2. He was released from ICE custody on an Order of Supervision on January 3, 2013. Doc. No. 8-1, ¶ 12. Subsequently, ICE determined there was a change in circumstances regarding Petitioner and they were going to deport him; he was arrested on December 11, 2025. Doc. Nos. 1, ¶ 27; 8-2; 8-3. On that same day, he was given his reasons for revocation of his order for supervision and submitted to an informal interview, where he indicated a fear he will be killed if he is sent back to Laos. Doc. No. 8-3. On

December 14, 2025, ICE submitted its formal Notice of Revocation of Release indicating it "will pursue new efforts to remove [him] to Laos." Id. Petitioner claims this process violates (1) 8 U.S.C. § 1231, (2) his substantive and procedural due process rights, (3) his right to be arrested on consent or judicial warrant under the Fourth Amendment, and (4) the Accardi[1] doctrine. Doc. No. 1, ¶¶46-65. For the reasons set forth below, the Petition is **DENIED** and **DISMISSED without prejudice**.

## DISCUSSION

### I.     Legal Standard: Habeas Corpus

[¶ 3]     The Constitution provides the right to a Writ of Habeas Corpus, which requires authorities to present a detained person before the court to determine if the detainment is lawful. See U.S. Const. Art. I, § 9. "Habeas is at its core a remedy for unlawful executive detention." Munaf v. Green, 553 U.S. 674, 693 (2008). As a general matter, 28 U.S.C. § 2241 grants district courts broad jurisdiction to issue a writ of habeas corpus "as law and justice require." Jones v. Hendrix, 599 U.S. 465, 473 (2023). A prisoner can bring a petition for a writ of habeas corpus when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241(c)(3) confers jurisdiction on district courts to hear habeas corpus challenges to the legality of the detention of aliens. Rasul v. Bush, 542 U.S. 466 (2004).

[¶ 4]     To benefit from the writ's protection, a habeas petitioner bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. Maldonado v. Olson, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases). Since the Petitioner is currently being held in Minnesota, this Court has jurisdiction over this matter. See Trump v. J.G.G., 604 U.S. 670,

---

[1] United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954).

672 (2025) (per curiam) (holding that jurisdiction for core habeas petitions "lies in only . . . the district of confinement").

## II.     Detainment under § 1231

[¶ 5]     Generally, after an order of removal the government has 90 days to remove the alien from the United States, starting from either the date the order is administratively final, the date of a judicial review of the order, or after other confinement is complete. 8 U.S.C. § 1231(a)(1)(A)–(B). After 90 days, detainees are released on supervision unless they are determined "to be a risk to the community or unlikely to comply with the order of removal." Id. § 1231(a)(3), (6). Supervision, including its revocation, is governed by regulation. Id. § 1231(a)(3).

> Upon revocation, the alien will be **notified of the reasons for revocation** of his or her release. The Service will conduct an **initial informal interview promptly after his or her return to Service custody** to **afford the alien an opportunity to respond to the reasons for revocation** stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added).

[¶ 6]     This process was followed in this case. The Petitioner was brought into ICE custody on December 11, 2025. He was notified of the reasons for the revocation of his release. He submitted to the informal interview and was given an opportunity to respond. The Petitioner argues at length how the formal Notice of Revocation was not given to him until December 14, 2025. However, the Regulation only requires notification, and the Petitioner has not pointed to any requirement that such notice must be in writing. Based upon the evidence before the Court, ICE complied with its regulatory requirements. It is well within ICE's authority to detain Petitioner—an alien ordered

removed after a rape conviction—to remove Petitioner to his home country of Laos. The Court, therefore, finds the Respondents' detaining Petitioner did not violate 8 U.S.C. § 1231.

### III.    Due Process

[¶ 7]    Petitioner argues both his substantive and procedural due process rights have been violated by his continued detention. For due process purposes, in Zadvydas v. Davis, the Supreme Court stated that a six-month detention is presumptively reasonable, but after that time detention may become unreasonable. 533 U.S. 678, 701 (2001). However, this presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Other courts have previously recognized several situations that meet this criteria: no country will accept the detainee, origin or other foreign country refuses travel documents or delays to the point of a presumption they will never be issued, or political conditions of the country of origin. Ahmed v. Brott, Civ. No. 14-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015). "In other words . . . there must be some indication that the government is either unwilling or, due to seemingly insurmountable barriers, incapable of executing an alien's removal." Id.

[¶ 8]    These barriers do not exist in the present case. At the present time, Petitioner is well within the constitutional bounds for detention while the Respondents attempt to secure his removal to Laos. Petitioner has presented no evidence Loas is unable or unwilling to accept his deportation. The Respondents believe it is an appropriate time to attempt to remove him. For constitutional purposes, because Petitioner's detention is still within the six-month presumptive period under Zadvydas, his due process claims necessarily fail.

### IV.     Fourth Amendment Search and Seizure

[¶ 9]   Petitioner claims he was arrested without consent or a judicial warrant for his arrest. However, nothing in 8 U.S.C. § 1231 or 8 C.F.R. 241.13 require a warrant to revoke an alien's release when there is an outstanding order for removal of the alien from the United States. Indeed, it appears the agents' actions are justified under 8 U.S.C. § 1357, which allows immigration officers without a warrant "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." This is precisely what happened in this case. They detained him without a warrant to conduct the informal interview after notifying him of the revocation of his supervision. See Noem v. Vasquez Perdomo, 146 S. Ct. 1, 3 (Kavanaugh, J., concurring) ("[R]easonable suspicion means only that immigration officers may briefly stop the individual and inquire about immigration status. . . . Only if the person is illegally in the United States may the stop lead to further immigration proceedings."). Petitioner's claim he was arrested contrary to the Fourth Amendment, therefore, fails.

### V.     Accardi Doctrine

[¶ 10]   Petitioner's final claim asks the court to set aside the agency's actions under Accardi. This claim, however, is premised on the success of Petitioner's underlying claims, which the Court has rejected. See Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) ("If Petitioner can prove the allegation [that the agency failed to follow its rules in a hearing] he should receive a new hearing."). Because the Court concludes the agency followed its regulations, the Court finds there is no justification to set aside its action in detaining Petitioner while it attempts to remove him to Laos. See 8 C.F.R. § 241.4(i)(3).

## CONCLUSION

[¶ 11]   Accordingly, for the reasons set forth above, the Petitioner's Habeas Petition is **DENIED**. This action is **DISMISSED without prejudice**.

[¶ 12]  **IT IS SO ORDERED**.

DATED March 3, 2026.

Daniel M. Traynor, District Judge
United States District Court